FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 27, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEFFREY G.,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY[1],<br><br>    Defendant. | No. 1:19-CV-03053-JTR<br><br>ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 15. Attorney D. James Tree represents Jeffrey G. (Plaintiff); Special Assistant United States Attorney Alexis Toma represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, IN PART,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 1

**REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income on August 14, 2015, alleging disability since August 1, 2015, due to learning disabilities, insomnia, seizures, sleep apnea, left arm and leg numbness, aggression/anger, and depression. Tr. 115. The application was denied initially and upon reconsideration. Tr. 151-54, 158-64. Administrative Law Judge (ALJ) Keith Allred held a hearing on August 8, 2017, Tr. 52-91, and issued an unfavorable decision on March 20, 2018, Tr. 15-40. Plaintiff requested review of the ALJ's decision from the Appeals Council. Tr. 218-20. The Appeals Council denied the request for review on January 30, 2019. Tr. 1-5. The ALJ's March 2018 decision is the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on March 26, 2019. ECF No. 1.

## STATEMENT OF FACTS

Plaintiff was born in 1985 and was 30 years old as of the filing of his application. Tr. 39. He was born with his umbilical cord around his neck, leading to central nervous system abnormalities causing left side weakness and developmental impairment. Tr. 350, 500, 609. He was in special education throughout his school years and graduated with a regular diploma. Tr. 347. His work history has been limited to a few short-term jobs unloading boxes and sorting fruit. Tr. 63-65, 85-86.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*,

201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-

1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

**ADMINISTRATIVE DECISION**

On March 20, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 15-40.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date. Tr. 18.

At step two, the ALJ determined Plaintiff had the following severe impairments: late effects of injuries to the nervous system; epilepsy; sleep related breathing disorder; obesity; learning disorder; borderline intellectual functioning; affective disorder; personality disorder; and bipolar disorder. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 18-22.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found he could perform a range of light work, with the following limitations:

> lifting and carrying twenty pounds occasionally, ten pounds frequently and sitting for six hours in an eight-hour workday, and standing and walking for six hours out of an eight-hour workday, with normal rest breaks except he can occasionally climb ramps, stairs, balance, stoop, bend, squat, kneel, and crouch, never crawl or climb ladders, ropes, or scaffolds. His left upper extremity can assist in lifting and handling but only occasionally grip and occasionally reach. He cannot be exposed to hazards like unprotected heights or moving machinery. The claimant is able to perform the basic mental demands of competitive, unskilled work, including the ability to understand, carry out, and remember simple instructions, to respond appropriately to supervision, coworkers, and usual work situations, and to deal with changes in a routine work setting. He can perform work that involves only occasional interaction with supervisors, coworkers, and the general public, and cannot perform fast paced production line type

work. He is limited to performing work which requires no more than a level one (third grade) reading, math, and language ability.

Tr. 23.

At step four, the ALJ found Plaintiff had no past relevant work. Tr. 39.

At step five the ALJ found that, considering Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, specifically identifying the representative occupations of cleaner housekeeping, cleaner and polisher, and cleaner. Tr. 40.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the date the application was filed through the date of the decision. Tr. 40.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the Commissioner erred by (1) making unsupported step-five findings; (2) failing to properly assess Listing 12.05B; (3) improperly assessing the medical opinions; (4) failing to assess the third-party testimony; and (5) failing to fully credit Plaintiff's subjective statements.

## DISCUSSION

**1.      Step five findings**

At step five of the sequential evaluation process the Commissioner must show that there are jobs that exist in significant numbers in the national economy that the claimant is capable of performing, taking into consideration the claimant's residual functional capacity, age, education, and work experience. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). To meet this burden, the ALJ may rely on a vocational expert's testimony that is based on a hypothetical that contains all of the

limitations the ALJ found credible and supported by substantial evidence in the record. *Bayliss v Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005).

In making the step five findings, the ALJ has an affirmative responsibility to ask the vocational expert about any possible conflict between the provided testimony and information provided in the Dictionary of Occupational Titles (DOT). Social Security Ruling 00-4p. "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Lamear v. Colvin*, 865 F.3d 1201, 1206 (9th Cir. 2017).

Following a hypothetical question that matched the ultimately adopted RFC, the vocational expert identified three jobs: Cleaner Housekeeping, Cleaner and Polisher, and Cleaner. Tr. 87-88. She testified that there was no conflict between her testimony and the Dictionary of Occupational Titles. Tr. 88. The ALJ adopted the three occupations at step five.

Plaintiff argues the job requirements regarding reaching and handling for each of the jobs exceed the limitations in the RFC regarding Plaintiff's ability to use his left arm, and the ALJ failed to acknowledge or resolve the discrepancy. ECF No. 14 at 3-4. Defendant argues there is no obvious or apparent conflict between the vocational expert's testimony and the DOT, as the DOT is silent on whether reaching and handling must be performed bilaterally. ECF No. 15 at 3-4.

The ALJ found Plaintiff's "left upper extremity can assist in lifting and handling but only occasionally grip and occasionally reach." Tr. 23. The companion manual to the DOT indicates that the Cleaner Housekeeper and Cleaner jobs require frequent reaching and handling, and the Cleaner Polisher job requires constant reaching and handling. *See* Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, U.S. Department of

///

Labor 132, 318 (1993).[2] The job descriptions in the DOT indicate that the general tasks for these jobs include detailed manipulation of objects, cleaning, folding linens, and making beds. DOT #704.687-010 (Cleaner), 1991 WL 678987; DOT #709.687-010 (Cleaner and Polisher), 1991 WL 679134; DOT #323.687-014 (Cleaner, Housekeeping), 1991 WL 672783. There is an apparent and unresolved conflict between the vocational expert's testimony and the DOT. Despite the vocational expert's statement that there was no conflict between her testimony and the DOT, she failed to explain how an individual limited to occasional reaching and gripping with one arm and only able to use that arm as an assist in lifting and handling could still perform cleaning jobs requiring frequent or constant reaching and handling.

In *Lamear*, the Ninth Circuit rejected the Commissioner's argument that there is no apparent conflict in such situations because of the DOT's silence on whether bilateral dexterity is required. *Lamear*, 865 F.3d at 1206. The court noted the record, the DOT, and common experience did not support a finding that bilateral manual dexterity was not required. *Id.* As in *Lamear*, the Court here cannot conclude from the evidence available that limitation on the use of one arm results in no inconsistency with the stated requirements in the DOT.

On remand, the ALJ shall inquire as to any conflicts between the vocational expert's testimony and the DOT and resolve any conflicts prior to relying on the testimony.

---

[2] The Selected Characteristics of Occupations includes information regarding the physical demands of each occupation, including reaching (RE) and handling (HA), with the frequency of the demand for each activity designated as never (N), occasional (O), frequent (F) or constant (C). *See* Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, U.S. Department of Labor, Appendix C (1993).

## 2. Step three findings

Plaintiff argues the ALJ erred in finding his intellectual disability does not meet the requirements of Listing 12.05B. ECF No. 14 at 4-9. Specifically, he argues the ALJ erred in his assessment of the "paragraph B" criteria. *Id.* Defendant asserts the ALJ sufficiently discussed the evidence and argues Plaintiff is merely encouraging an alternative interpretation of the record. ECF No. 15 at 4-10.

A claimant is considered disabled at step three when his impairment meets or equals a listed impairment in Appendix 1 and meets the durational requirement. 20 C.F.R. § 416.920(d). Listing 12.05B is met when the individual has a full scale IQ of 70 or below and significant deficits in adaptive functioning manifested by an extreme limitation of one or marked limitation of two of the "paragraph B" criteria, and the evidence supports the conclusion that the disorder began prior to the claimant's attainment of age 22. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.05B.

The ALJ found Plaintiff's condition did not meet or equal this listing because he did not have one extreme or two marked limitations in the paragraph B criteria, instead finding Plaintiff had a moderate limitation in concentration, persistence, and pace and no limitation in understanding, remembering or applying information, no limitation in interacting with others, and no limitation in adapting or managing himself. Tr. 22-23.

Plaintiff challenges the ALJ's assessment of the paragraph B criteria, arguing the ALJ selectively read the record, ignoring evidence that supported greater limitations in each of these categories. "[W]hen the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). However, in conducting our review, we "must consider the entire record as a whole and may not affirm simply by isolating

///

a 'specific quantum of supporting evidence.'" *Hill v. Astrue*, 695 F.3d 1153, 1159 (9th Cir. 2012).

The Court finds the ALJ's conclusions regarding the paragraph B criteria are not supported by substantial evidence, particularly with respect to finding no limitation in three of the four areas.

The ALJ found Plaintiff had no limitation in understanding, remembering, or applying information. Tr. 20. The ALJ based this finding on Plaintiff's ability to care for his own basic needs, his participation in the development of his counseling treatment plan, exams showing intact memory, and the fact that Plaintiff was good at math in school. *Id.* The description of this element in the listing, however, notes that this category refers to the ability to learn, recall, and use information to perform work activities, including following directions, identifying and solving problems, and using reason and judgment to make work-related decisions. Listing 12.00E.1. The finding of no limitation in this area appears inconsistent with the ALJ's RFC finding limiting Plaintiff to no more than unskilled work with simple instructions and no more than third-grade reading, math, and language demands. Tr. 23. The ALJ's analysis did not reference evidence of limitation in the functions specified in this listing, including testing finding his remote memory, verbal comprehension, and processing speed in the borderline or extremely low range (tr. 421-22); mental status exams noting limited fund of knowledge (tr. 343, 421, 528); and testimony indicating Plaintiff has poor reading skills (tr. 69, 80). The Court therefore finds the ALJ's determination of no limitation in this area unsupported by substantial evidence.

The ALJ also found no limitation in Plaintiff's ability to interact with others, noting he spent time with family and friends and was noted by a treating provider to have no difficulty getting along with others. Tr. 20. The ALJ also noted Plaintiff's report that he was never fired or laid off from a job for not getting along with others. *Id.* This finding is inconsistent with the ALJ's RFC determination that

Plaintiff was limited to no more than occasional interaction with supervisors, coworkers, and the general public. Tr. 23. The ALJ further failed to acknowledge Plaintiff's ongoing treatment for anger management and mood dysregulation. Tr. 352, 367, 372, 417, 478, 483, 490, 531, 548, 550, 568, 581. The ALJ's discussion does not resolve this discrepancy. The Court therefore finds the assessment of no limitations in this category to not be supported by substantial evidence.

Finally, the ALJ found Plaintiff had no limitation in adapting and managing himself. Tr. 20. The ALJ noted Plaintiff lived alone, was capable of caring for his personal needs, and was noted to have largely normal mental status exams. *Id.* The ALJ also relied on Plaintiff's report that he is able to handle stress and changes in routine as long as there are no sudden changes. *Id.* The introduction to listing 12.00 indicates "this area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." Listing 12.00E.4. The ALJ's discussion fails to take into account Plaintiff's difficulty with mood regulation and anger management, as noted above, along with evidence of his frustration in the workplace and with his family members, occasionally leading to violence. Tr. 72, 79, 84, 484, 549. The finding of no limitation in this area is not supported by substantial evidence.

The introduction to the mental Listings indicates that the greatest degree of limitation in any part of the area of mental functioning directs the rating of limitation of that whole area. Listing 12.00F.3.f.[3] A minimal ability to perform in each area does not negate the evidence of at least some limitation. While the Court will not conclude that these factors result in listing-level severity, the ALJ's

---

[3]"For example, with respect to paragraph B3, if you have marked limitation in maintaining pace, and mild or moderate limitations in concentrating and persisting, we will find that you have marked limitation in the whole paragraph B3 area of mental functioning." Listing 12.00F.3.f.ii.

citation of selected facts to justify finding no limitation in these areas is not supported by substantial evidence and is inconsistent with his RFC findings. On remand the ALJ will reconsider the listing, making findings on each element and adequately explaining the ratings for each of the paragraph B criteria.

### 3. Medical opinions

Plaintiff argues the ALJ erred in evaluating the medical opinion evidence, giving undue weight to the non-examining state agency doctors' opinions and offering insufficient reasons for discounting the treating and examining doctors' opinions. Tr. 9-18.

When a treating or examining physician's opinion is contradicted by another physician, the ALJ must offer "specific and legitimate" reasons to reject the opinion. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### a. Dr. Heisey
#### i. 2015 opinion

Plaintiff's treating doctor, Dr. Kyle Heisey, completed a disability certification form for the Washington State Department of Social and Health Services on September 30, 2015. Tr. 391-93. He noted Plaintiff's impairments to include a seizure disorder, obstructive sleep apnea, intellectual disability/learning disability, encephalomalacia with left side hemiparesis, and depression/anxiety. Tr. 391. He opined Plaintiff was markedly limited by his seizure disorder, moderately limited in communicating based on his learning disorder, and moderately limited in the use of his arm and in performing some postural activities based on his hemiparesis. Tr. 392. He concluded Plaintiff was limited to sedentary work and that the impairment was permanent. Tr. 393.

The ALJ gave this opinion little weight, finding there was no evidence to support a limitation to sedentary work, noting a normal physical exam (other than conflicting notes about his gait), and generally normal physical exams throughout the record. Tr. 34. The ALJ also found Dr. Heisey's assessment of marked limitations due to Plaintiff's seizure disorder to be misplaced and hypothetical given the lack of evidence of ongoing seizures and reasonable control with current medication. *Id.* The ALJ further noted Dr. Heisey did not have any information from Plaintiff's mental health providers and indicated that the purpose of the opinion was to qualify Plaintiff for medical benefits and not to assess his functional limitations. *Id.*

Plaintiff argues the ALJ's rationale does not withstand scrutiny, noting the ALJ was incorrect about Plaintiff's seizure timeline, and asserting the assessment of sedentary work was not based on seizure activity anyway. ECF No. 14 at 14-15. He further argues that his physical condition has existed since birth, and therefore would not be something that would be reevaluated at every medical appointment. *Id.* at 15. He finally argues that the purpose for which an opinion is completed is an irrelevant factor. *Id.* at 16. Defendant argues the ALJ's interpretation is reasonable and proper and that he reasonably relied on the lack of abnormal physical exams in rejecting Dr. Heisey's opinion limiting Plaintiff to sedentary work.

An ALJ must consider an opinion's consistency with the record as a whole when assessing the reliability of the opinion. 20 C.F.R. § 416.927(c)(4). A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider. *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 692-93 (9th Cir.2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject treating physician's opinion). Dr. Heisey's records from the day he completed the form document no abnormal findings other than some difficulty with tandem gait, but the doctor still indicated gait was normal. Tr. 396. He

indicated control of seizures was reasonable and it was unclear if Plaintiff was continuing to have seizures. *Id.* Plaintiff reported at this appointment that he had been doing "pretty well." *Id.* The ALJ further pointed to a number of other normal physical exams throughout the record. While Plaintiff offers an alternative interpretation of these treatment notes, the ALJ's interpretation is rational and supported by substantial evidence. "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

However, as this claim is being remanded for further proceedings on other bases, the ALJ will reconsider the medical evidence as a whole in evaluating the five-step process.

    *ii.    2016 opinion*

Dr. Heisey completed another medical source statement in May 2016. Tr. 491-92. He noted Plaintiff's impairments to include seizure disorder, learning disability, left hand paresis due to brain damage in utero, obstructive sleep apnea, depression, and bipolar disorder. Tr. 491. He opined Plaintiff would be likely to miss four or more days of work per month and would be unlikely to tolerate the stress of a regular work week. Tr. 492.

The ALJ gave this opinion "split weight," giving little weight to the opinion regarding missed work. Tr. 33-34. The ALJ noted the opinion was inconsistent with the evidence of record documenting no abnormal exams. *Id.* He further found the opinion to be somewhat vague and lacking in explanation and inconsistent with Plaintiff's past work activity. *Id.* Finally, he found the purpose of the opinion was to qualify Plaintiff for benefits and not to objectively assess his functional limitations. *Id.*

Plaintiff argues the ALJ erred in this discussion, as there was significant evidence supportive of Plaintiff's various conditions, including evidence that his condition met the listing for intellectual disorder, and that the combined impact of

his conditions supports the conclusion that he would miss four or more days of work per month. ECF No. 14 at 12-13. Plaintiff further asserts the opinion that Plaintiff would regularly miss work is a functional limitation, and the opinion is therefore not vague. *Id.* at 13. Plaintiff also argues that Dr. Heisey's treatment records and familiarity with Plaintiff's condition over many years of treatment provide the context of explanation for the opinion. *Id.* at 13-14. Finally, Plaintiff argues the ALJ misrepresented the record with respect to his work history, and again argues that the purpose for which an opinion was prepared is irrelevant to its reliability. *Id.* at 14. Defendant asserts the ALJ properly considered the opinion's consistency with the record as a whole, including Dr. Heisey's own records, and properly looked to the amount of explanation provided for the opinion. ECF No. 15 at 10-11.

An ALJ may legitimately consider an opinion's consistency with the record as a whole, along with the amount of explanation provided by the source. 20 C.F.R. § 416.927(c)(3)-(4). Dr. Heisey did not explain the basis for opining Plaintiff would miss work on a regular basis, other than to state he would not be likely to tolerate the stress of the workplace. Tr. 492. Therefore, the ALJ's rational is specific and legitimate.

However, as this claim is being remanded for further proceedings, the ALJ shall reconsider the entire record in making his decision.

### b. Dr. Genthe

Plaintiff underwent a consultative psychological exam with Dr. Thomas Genthe on September 23, 2015. Tr. 416-25. In addition to the clinical interview and mental status exam, Dr. Genthe administered a battery of psychometric assessment tools. Tr. 421-25. He diagnosed Plaintiff with depressive disorder and intellectual disability, and found him to be markedly impaired in a variety of work-related categories and severely limited in adapting to changes in a routine work setting. Tr. 418-19.

The ALJ gave this opinion "split weight," giving some weight to the symptoms and observations, but little weight as to the assessed limitations. Tr. 36-37. The ALJ noted Dr. Genthe did not review any records for his evaluation, and the ALJ found the opinion to be unsupported by the exam and somewhat inconsistent with the findings contained therein. *Id.* He further noted that Dr. Genthe found Plaintiff's depression to be only mild and well-managed with medication, and that Dr. Genthe said ongoing treatment services should not interfere with pursuing work-related activities. Tr. 37. Finally, the ALJ noted Dr. Genthe found Plaintiff's self-reporting of problems to be of questionable veracity and his response pattern was reflective of inconsistent responding. *Id.*

Plaintiff challenges each of these reasons as irrelevant or inconsistent with the record. ECF No. 14 at 16-18. Defendant argues the ALJ appropriately found the opinion unsupported by the exam and reasonably relied on Dr. Genthe's finding that Plaintiff's self-reports were questionable, thus making Plaintiff's entire exam suspect. ECF No. 15 at 13-15. The Court finds none of the reasons offered by the ALJ rise to the standard of specific and legitimate.

The fact that Dr. Genthe did not review any records prior to offering his opinion does not detract from the conclusions, particularly in light of the extensive objective testing Dr. Genthe performed. The ALJ failed to identify any specific treatment records that were inconsistent with Dr. Genthe's report that, had they been reviewed, may have changed the results. This factor is not significant enough to call into question the entire report.

The ALJ found the opinion was not supported by the exam and was somewhat inconsistent with the findings contained in the exam. While a conflict between notes and an opinion may constitute an adequate reason to discount an opinion, substantial evidence does not support the ALJ's conclusion in this case. The factors identified by the ALJ, including Plaintiff's ability to live independently and that he reported having his mood under control and had no significant

difficulty getting along with people do not demonstrate any inconsistency with Dr. Genthe's opinion. Dr. Genthe did not find Plaintiff completely impaired, and indeed found only mild or moderate limitations in a number of areas of functioning. Tr. 418-19. Similarly, the normal findings on the mental status exam do not invalidate the abnormal findings. There is nothing facially inconsistent between an individual having normal appearance, speech, and attitude yet still being impaired in other areas. In addition to the objective cognitive testing, Dr. Genthe noted abnormal results with respect to Plaintiff's memory, fund of knowledge, abstract thought, and insight and judgment. Tr. 421. These objective results provide an evidentiary basis for Dr. Genthe's opinion, even though some findings on exam were normal. The ALJ's summary touches only on the normal findings and omits the abnormal ones, and thus is not supported by substantial evidence.

Similarly, while the ALJ was correct in that Dr. Genthe found Plaintiff's depression to be mild and well-controlled, the Summary and Conclusions portion of Dr. Genthe's report makes clear that he felt Plaintiff's cognitive functioning posed the primary barrier to work and would "likely hinder his acquisition of many important skills in a reasonable amount of time." Tr. 419.

Dr. Genthe's passing statement that mental health counseling or medication management "should not prevent him from pursuing everyday work related tasks or activities commensurate with his level of education and training" has no relevance to the reliability of the assessed limits. At most it indicates treatment would fit within the limitations recommended.

Finally, the ALJ's reliance on Dr. Genthe's assessment of the reliability of some of Plaintiff's statements as a basis for disregarding the opinion is unsupported. In the first place, the comments were Dr. Genthe's own assessments, and thus were factored into his evaluation of Plaintiff's limits. More importantly, however, Dr. Genthe stated the testing provided a valid assessment of Plaintiff's

current mental status. Tr. 420. The veracity issues were limited to Plaintiff's self-reporting of problems on the Personality Assessment Inventory (PAI). Tr. 423-25. As Dr. Genthe explained in detail, the validity indices can be influenced by a number of factors, other than an effort to deceive. *Id.* Defendant's assertion that an ALJ may discount a doctor's opinion if it is based largely on a claimant's incredible self-reports, while an accurate statement of the law, is inapplicable in the current circumstances. The PAI was one assessment in a battery of other objective tests and does not represent overall "incredible self-reports."

The Court finds the ALJ failed to offer specific and legitimate reasons for discounting Dr. Genthe's report. On remand, the ALJ will reconsider the opinion along with the medical evidence as a whole.

c. **Dr. Colby**

In October 2015, Dr. Faulder Colby reviewed Plaintiff's DSHS file, including opinions from Dr. Heisey, Dr. Genthe, and Dr. R.A. Cline. Tr. 426-30. Dr. Faulder found mental limitations consistent with Dr. Genthe's opinion, and found Plaintiff limited to sedentary work with marked limitations in postural and manipulative abilities. Tr. 427-28.

The ALJ failed to acknowledge this opinion. Defendant argues any error on the part of the ALJ was harmless, as the ALJ gave valid reasons for discounting similar evidence. ECF No. 15 at 15.

Because the Court finds the ALJ erred in his rejection of Dr. Genthe's report, and because this claim is being remanded for reevaluation of other evidence, the ALJ will also consider Dr. Colby's opinion in connection with the remainder of the record, and discuss the weight assigned.

4. **Plaintiff's subjective statements**

Plaintiff contends the ALJ erred by improperly rejecting his subjective complaints. ECF No. 14 at 19-22.

///

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 17

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 25. The ALJ found: (1) physical and objective exam findings related to Plaintiff's epilepsy failed to establish the limitations alleged and records indicated the condition was well-controlled with medication; (2) treatment notes did not document abnormalities related to alleged left side weakness and Plaintiff's own doctor indicated it was only slight; (3) Plaintiff's activities indicated greater ability than alleged; (4) mental status examinations were overwhelmingly normal; (5) Plaintiff repeatedly indicated he was doing well; and (6) Plaintiff was previously able to maintain a job for two months. Tr. 25-32.

Although it cannot serve as the sole ground for rejecting a claimant's symptom statements, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). An ALJ may legitimately consider the objective exam findings and their consistency with a claimant's allegations. A claimant's daily activities may also support an adverse credibility finding if the claimant's activities contradict his other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

However, as this claim is being remanded for reconsideration of the medical evidence, the ALJ shall also re-evaluate Plaintiff's statements and testimony. The ALJ shall reassess what statements, if any, are not consistent with the medical evidence and other evidence in the record, and what specific evidence undermines those statements.

**5.     Third-party evidence**

Plaintiff argues the ALJ erred in failing to discuss the testimony from his mother. ECF No. 14 at 18. Defendant asserts any error was harmless, as Plaintiff's mother's testimony largely paralleled that of Plaintiff, and the ALJ gave sufficient reasons for discounting Plaintiff's testimony. ECF No. 15 at 20.

Because the claim is being remanded on other bases, the ALJ will have the opportunity to consider and address the third-party testimony.

## CONCLUSION

Plaintiff argues the decision should be reversed and remanded for the payment of benefits. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is necessary for a proper determination.

The ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall reevaluate the medical evidence and Plaintiff's subjective complaints,

reassess step three, and, as necessary, formulate a new RFC, obtain supplemental testimony from a vocational expert, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, IN PART**.

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED March 27, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE